# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | |
|---|---|
| CHARLIE DUNCAN, Executor of the Estate of Paul W. McVay, et al., | Case No. 3:17-cv-00025 |
| Plaintiffs, | District Judge Thomas M. Rose<br>Magistrate Judge Sharon L. Ovington |
| vs. | |
| MINNESOTA LIFE INSURANCE COMPANY, | |
| Defendant. | |

# ORDER

Plaintiffs bring this ERISA[1] case seeking a declaration that establishes they are entitled to receive accidental death benefits under an insurance policy (the Policy) issued by Defendant Minnesota Life Insurance Company. Plaintiffs allege that the Policy is "entirely underwritten and administered by Defendant Minnesota Life." (Doc. #16, *PageID* #439). In 2010, the insured under the Policy, Paul W. McVay, died while he was a patient in a health-care facility. The Policy names McVay's sister, Plaintiff Janet Freel, as beneficiary. Plaintiff Charlie Duncan is Executor of McVay's Estate.

Minnesota Life denied Plaintiffs' claim for benefits under the Policy based on its conclusion that McVay's death was not accidental. Plaintiffs assert that Minnesota Life acted arbitrarily and capriciously by denying Plaintiffs' application for benefits. In support of these claims, Plaintiffs' Amended Complaint alleges, in part:

---

[1] ERISA is the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq*.

> [Minnesota Life] labored under a conflict of interest in that it simultaneously occupied the roles of drafting plan terms, interpreting those terms to its advantage, deciding all benefit claims and funding the plan, such that its decision to deny accidental death benefits arising from the death of Mr. McVay inured to its financial advantage. In so acting to decide the McVay benefit claim in face of these conflicts of interest, [Minnesota Life] breached fiduciary duties owed to plan beneficiaries, including Mr. McVay and by representation, Plaintiffs.

(Doc. #11, *PageID* #64, ¶32).

Plaintiffs presently seek an Order permitting them to conduct discovery directed at Minnesota Life concerning its conflict of interest and its medical director's (Dr. Gretchen M. Bosacker's) possible conflict. They reason that conflict-of-interest discovery is warranted and proper given Minnesota Life's sole responsibility to decide claims and appeals while simultaneously bearing the sole financial risk for payment of all benefits. They also seek discovery concerning other alleged procedural defects in the denial of Plaintiffs' benefits application. One procedural defect they identify is that Minnesota Life "blatantly ignored the evidence of Mr. McVay's treating physician, the postmortem examination, and the death certificate itself." (Doc. #16, *PageID* #445).

The parties appear to agree that, in general, discovery beyond the administrative record in an ERISA case is not permissible because judicial review is limited to the administrative record. This is correct, as a normative discovery rule. *See Wilkins v. Baptist Healthcare Sys., Inc*., 150 F.3d 609, 619 (6th Cir. 1998); *see also Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 293 n.2 (6th Cir. 2005); *Williams v. USAble Life*, 3:12cv400, 2013 WL 3387806, at *1 (S.D. Ohio 2013) (Rose, D.J.). "An exception is recognized, however, when evidence outside the record 'is offered in support of a

procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part.'" *Johnson v. Connecticut Gen. Life Ins. Co.*, 324 F. App'x 459, 466 (6th Cir. 2009) (quoting, in part, *Wilkins,* 150 F.3d at 619 (Gilman, J., concurring)); *see Williams*, 2013 WL 3387806, at *1.

Dueling roles can create a conflict of interest for a plan administrator: "Often the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee is eligible for benefits and pays benefits out of its own pocket." *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 108 (2008). "The [administrator's] fiduciary interest may counsel in favor of granting a borderline claim while its immediate financial interest counsels to the contrary." *Id*. at 112.

When, as in the present case, the plan administrator is an insurance company that both processes benefit claims and pays or declines to pay benefits, a conflict of interest exists for ERISA purposes. *Id*. at 114; *see Johnson*, 324 F. App'x at 465. Why might such a conflict be significant? ERISA's beneficiary-favorable language provides the answer:

> ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan; § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials,"…; and it supplements marketplace and regulatory control with judicial review of individual claim denials, *see* § 1132(a)(1)(B).

3

*Glenn*, 554 U.S. at 115 (quoting, in part, *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989)).

Courts must consider a plan administrator's possible conflict of interest as a factor in determining whether it acted arbitrarily or capriciously in denying a claim for benefits.[2] *Id*. at 114-15; *see Calvert*, 409 F.3d at 292 ("we must take into consideration the fact that Liberty is acting under a potential conflict of interest…."). Additional factors might arise. *Glenn*, 554 U.S. at 116 ("conflicts are but one factor among many that a reviewing judge must take into account.").

In the present case, at this point, application of discovery rules would seem straightforward: Plaintiffs have identified Minnesota Life's possible conflict of interest in its dueling roles as plan administrator or claim reviewer and payor; a conflict of interest "must" be considered when reviewing the plan administrator's decision, *Glenn*, 554 U.S. at 116; *see Calvert,* 409 F.3d at 292; and, consequently, information regarding Minnesota Life's possible conflict is relevant and discoverable. *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense ….").

Minnesota Life disagrees. It contends that Plaintiffs' mere allegation of bias is insufficient to support their discovery requests. It further contends that Plaintiffs have failed to allege a colorable procedural challenge to its decision denying their application

---

[2] This is not intended as a holding that the arbitrary-and-capricious standard of review applies in the present case. The issue of whether it applies or whether the administrator's decision is reviewed *de novo*, *see Calvert*, 409 F.3d at 291-92, has not yet been litigated in this case. The parties disagree in their pleadings over the applicable standard of review.

for benefits. And, it maintains that Plaintiffs have failed to point to any facts supporting a claim that discovery may lead to evidence supporting the existence of a conflict or procedural challenge.

The results of discovery disputes in ERISA cases vary with courts sometimes permitting discovery and sometimes not. *See generally McLaren v. Trustee of Grp. Ins. Trust*, 1:16cv1164, 2017 WL 4417704, at *3 (S.D. Ohio 2017) (Litkovitz, M.J.) (Report and Recommendation and Order); *Neubert v. Life Ins. Co. of N. America*, 5:15cv643, 2013 WL 5595292, *1-4 (N.D. Ohio 2013) (Lioi, D.J.) (surveying and discussing cases). This variance is neither surprising nor confusing given the case-specific nature of the required analysis; the tension between the general rule that discovery does not normally extend beyond the administrative record in ERISA cases, *Moon v. Unum Provident Corp.*, 405 F.3d 373, 378 (6th Cir. 2005), and its exceptions; and the leeway the Sixth Circuit Court of Appeals has afforded district courts. "District courts are well-equipped to evaluate and determine whether and to what extent limited discovery is appropriate in furtherance of a colorable procedural challenge under *Wilkins*." *Johnson*, 324 F. App'x at 467.

That leeway, however, is circumscribed. It boils down to three concrete rules: (1) plaintiffs seeking procedural or conflict-of-interest discovery must do more than merely allege bias; (2) plaintiffs are not required to meet any evidentiary-threshold showing to obtain such discovery; and, (3) plaintiffs are not automatically entitled to such discovery. *See Johnson*, 324 F. App'x at 467 (and cases discussed therein); *see also McLaren*, 2017 WL 4417704, at *3 (and cases discussed therein).

5

Contrary to Minnesota Life's arguments, Plaintiffs have done more than merely allege the presence of Minnesota Life's conflict of interest or bias. Their allegations and evidence suggest that Minnesota Life's review might have been limited only to evidence supporting its decision to deny benefits. While Minnesota Life certainly disputes this, "[p]lan administrators may not arbitrarily disregard reliable medical evidence proffered by a claimant, including the opinions of a treating physician." *Evans v. UnumProvident Corp.,* 434 F.3d 866, 877 (6th Cir. 2006) (quoting *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 834 (2003); *see Niswonger v. PNC Bank Corp. & Affiliates Long Term Disability Plan*, 612 F. App'x 317, 321 (6th Cir. 2015). Plaintiffs did provide Minnesota Life with the strong opinions of Mr. McVay's treating physician, Dr. Richard L. Chamberlain. His opinions, if credited, directly conflict with Metropolitan Life's reasons for denying Plaintiffs' benefit application. He believes, for instance, that Mr. McVay "died … due to an intracranial hemorrhage after a fall…," and that Mr. McVay's "death was directly and solely related to an intracranial bleed secondary to trauma from the fall." (Doc. #12, *PageID* #191). This evidence goes to substantive merits of Plaintiffs' ERISA claims, and to this extent, it does not provide grounds for allowing Plaintiffs to seek discovery regarding the substantive merits of their claims. However, the presence of this evidence and the possibility that Minnesota Life ignored Dr. Chamberlain's opinions due to its conflict of interest point to potential procedural problems with Minnesota Life's decisional process that may be explored during discovery.

Minnesota Life, however, contends that Plaintiffs are on a fishing expedition. This is not so. The record contains some indication that Minnesota Life ignored Dr. Chamberlain's opinions. Its decisional letters concerning Plaintiffs' administrative appeals do not describe or mention Dr. Chamberlain's opinions. *Id*. at 119-20, 384-85. Additionally, Dr. Bosacker's notes (from her file review) quote one sentence from Dr. Chamberlain's letter but Dr. Bosacker does not mention or directly address Dr. Chamberlain's opinions. *Id*. at 72-73. These shortcomings in Dr. Bosacker's notes plus the omission of any direct description of, or specific consideration of, Dr. Chamberlain's opinions in Minnesota Life's denial go beyond mere allegations of bias, conflict of interest, or procedural defect.

Accordingly, Plaintiffs are entitled to limited discovery regarding Metropolitan Life's conflict of interest and/or Dr. Bosacker's possible conflict of interest.

## IT IS THEREFORE ORDERED THAT:

1. Plaintiffs' Motion for Order Granting Request for Discovery (Doc. #16) is **GRANTED**; and

2. **On or before January 19, 2018**, Plaintiffs shall file a discovery plan, identifying the specific discovery they seek on the conflict-of-interest issues. Defendant may, if necessary, file a responsive Memorandum **within seven days** of the date Plaintiffs file their discovery plan.

January 5, 2018                                              *s/Sharon L. Ovington*
                                                                             Sharon L. Ovington
                                                                             United States Magistrate Judge