# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

CHARLIE DUNCAN, Executor of the　　:　　Case No. 3:17-cv-00025
Estate of Paul W. McVay, et al.,　　　　:
　　　　　　　　　　　　　　　　　　　　:　　District Judge Thomas M. Rose
　　　　Plaintiffs,　　　　　　　　　　　:　　Magistrate Judge Sharon L. Ovington
　　　　　　　　　　　　　　　　　　　　:
vs.　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
MINNESOTA LIFE INSURANCE　　　　　:
COMPANY,　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　Defendant.　　　　　　　　　　　:

## DECISION AND ENTRY

　　　　This case arose from the fact that Defendant Minnesota Life Insurance Company (an ERISA plan administrator and fiduciary) denied Plaintiff Janet Freel's (an ERISA beneficiary's) claim for accidental-death benefits under an insurance policy purchased by her brother.

　　　　Previously, after an *in-camera* review, the Court concluded that the attorney-client privilege justified Minnesota Life's decision not to produce certain communications to Plaintiffs.[1] (Doc. #40). Plaintiffs presently argue—for the first time—that ERISA's "fiduciary exception" applies to those communications and requires Minnesota Life to disclose them.

　　　　Plaintiffs start by reasoning that the attorney-client privilege does not apply at all in ERISA cases such as this because ERISA fiduciaries are charged with administering plans

---

[1] The Court's previous discussion of the attorney-client privilege is incorporated by reference herein. (Doc. #42, *PageID* #s 764-65).

"solely in the interests of the participants and beneficiaries," 29 U.S.C. § 1104(a)(1), and because ERISA fiduciaries have broad-disclosure requirements designed to provide beneficiaries with a full and fair review of decisions to deny benefits.

Minnesota Life relies on the historic strength of the attorney-client privilege, remembering that it is "'the oldest of privileges for confidential communication known to the common law.'" (Doc. #17, *PageID* #880 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). Minnesota Life urges the Court to consider this and the attorney-client privilege's rationales: (1) it promotes full and frank communications between attorneys and their clients, "thereby promoting the broader public interest in the administration of justice…" *id*. (citing *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 455 (6th Cir. 1991)); and (2) it provides "'certainty to litigants that information relayed to one's attorney will not be disclosed….'" *Id*. (quoting *In re Columbia/HCA Healthcare Billing Practices*, 293 F.3d 289, 304 (6th Cir. 2002)). With these rationales in force, Minnesota Life argues that the fiduciary exception to the attorney-client privilege is limited and does not apply in this case. It finds further efficacy in the generality that "'hard cases should be resolved in favor of the privilege, not in favor of disclosure.'" *Id*. (quoting *United States v. Mett*, 178 F.3d 1058, 1064 (9th Cir. 1999)).

As an initial matter, it is tempting to delve into Plaintiff's somewhat theoretical argument that the attorney-client privilege does not apply in the first instance in this case. After all, Plaintiffs are essentially proposing a standalone discovery rule based on fealty to a statute, while Minnesota Life invokes the attorney-client privilege based on fealty to federal common law, *see Reed v. Baxter*, 134 F.3d 351, 355 (6th Cir. 1998) ("Questions of

2

privileged are to be determined by federal common law in federal question cases.").  And there is case law validating each view.  *See Moss v. Unum Life Ins. Co*., 495 F. App'x 583, 595 (6th Cir. 2012) (ERISA case treating the fiduciary exception as an exception to the attorney-client privilege); *see also Mett,* 178 F.3d at 1064 ("the fiduciary exception is not an 'exception' to the attorney-client privilege at all….").  But, temptation aside, a decision favoring one approach over the other is unnecessary for two practical reasons.  First, the Court in this case previously applied the attorney-client privilege to the communications at issue.  Consequently, an exception to the privilege would need to apply for Plaintiff to gain access to those communications.  Second, each view leads to the same destination: "On either rationale…, it is clear that the fiduciary exception has its limits—by agreeing to serve as a fiduciary, an ERISA trustee is not completely debilitated from enjoying a confidential attorney-client relationship…."  *Mett*, 178 F.3d at 1063.

How, then, does the fiduciary exception operate?

In the ERISA arena, the fiduciary exception says, "a fiduciary of an ERISA plan 'must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan.'"  *Moss*, 495 F. App'x at 595 (quoting, in part, *Bland v. Fiatallis N. Am., Inc.,* 401 F.3d 779, 787 (7th Cir. 2005) (other citation omitted).  "This is because '[w]hen an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator.'"  *Id*. (quoting, in part, *Wildbur v. ARCO Chem. Co.,* 974 F.2d 631, 645 (5th Cir. 1992) (other citation omitted).  "The fiduciary exception generally applies only to communications related to plan administration

and not to communications after a final decision or 'addressing a challenge to the plan administrator in his or her personal capacity.'" *Id*. at 595-96 (citing *Redd v. Bhd. of Maint. of Way Emps. Div. of the Int'l Bhd. of Teamsters,* No. 08–11457, 2009 WL 1543325, at *1 (E.D. Mich. June 2, 2009)).

The present case does not involve communications that occurred after Minnesota Life's final denial of benefits and does not involve claims against a fiduciary in his or her personal capacity. This narrows the focus to the communications between Minnesota Life's claims-department personnel and its in-house counsel before Minnesota Life reached its final decision on August 15, 2016. Some of these communications occurred in 2011, at or near the time of Minnesota Life's initial decision to deny benefits on April 15, 2011; others occurred in 2013 at or near the time of Plaintiff's pending appeal; and the remaining occurred in 2016 near the date (again, August 15, 2016) Minnesota Life made its final decision to deny benefits.

Minnesota Life contends that throughout this time period, its in-house counsel assisted in preparing for anticipated litigation, rather than helping to process Ms. Freel's benefits claim or helping to decide whether to grant or deny her claim. It finds that none of its redacted communications involved the administration of the plan. (Doc. #42, *PageID* #882).

Plaintiffs contend:

[Minnesota Life] employees have testified the company's legal department plays a critical role in the administration of the plan. Claims specialists rely on the advice of its attorneys to determine whether a claimant is entitled to benefits under the terms of the plan. [Minnesota Life] is bound to provide Plaintiffs a full and fair review of the denial of their claim, and the ability to review the reasoning of those who played a role in the denial is vital to that

process. By lending their opinion to claim decisions, members of the [Minnesota Life] legal department took part in plan administration, thus acting for the sole benefit of Plaintiffs. Therefore, to the extent that [Minnesota Life's] communications with counsel involved plan management, the attorney-client privilege does not apply to those communications and [Minnesota Life] must disclose them.

(Doc. # 41, *PageID* #s 771-72).

"To determine whether the plan administrator was seeking legal advice in connection with plan administration and thus in his or her capacity as a fiduciary, courts generally look to whether the interests of the fiduciary and the beneficiary had diverged at the time the communication occurred." *Kushner v. Nationwide Mutual Insurance Company*, 2:17cv715, 2018 WL 3454685, at *3 (S.D. Ohio 2018) (Vascura, M.J.) (citing, as examples, *Moss*, 495 F. App'x at 595-96; *Allen v. Honeywell Ret. Earnings Plan*, 698 F. Supp. 2d 1197, 1202 (D. Ariz. 2010)). "'[W]hen the interests of the ERISA plan fiduciary and the plan beneficiaries have diverged sufficiently such that the fiduciary seeking legal advice is no longer acting directly in the interests of the beneficiaries but in its own interests to defend itself against the plan beneficiaries, then the attorney-client privilege remains intact.'" *Kushner*, 2018 WL 3454685, at *3 (quoting *Tatum v. R.J. Reynolds Tobacco Co.*, 247 F.R.D. 488, 497 (M.D.N.C. 2008)).

That said, "a sufficiently adversarial relationship may arise before the final decision denying benefits." *Christoff v. Unum Life Ins. Co. of Am.*, No. 0:17-cv-03512, 2018 WL 1327112, at *6-9 (N.D. Minn. Mar. 15, 2018). In addition to the timing of the communications, "[o]ther factors to be considered include evidence that: 1) the threat of litigation was more than a remote possibility; 2) the interests of the beneficiary and ERISA fiduciary had diverged significantly; 3) the documents or communications were not necessary to or relied upon in the administrative claim process; and 4) the documents relate to a settlor function (i.e., amendment of the plan) and were not considered in evaluating the claim at issue." *Klein v. Northwestern Mut.*

*Life Ins. Co.*, 806 F. Supp. 2d 1120, 1132-33 (S.D. Cal. 2011) (citing *Allen*, 698 F. Supp. 2d at 1203).

*Kushner*, 2018 WL 3454685, at *3. Yet, "the mere prospect of potential litigation over a claims decision is insufficient to defeat the fiduciary exception…." *Id.* The reasoning that supports this principle is grounded in the fiduciary duties ERISA imposes:

> If the Court finds ... that the pre-decisional legal advice was secured for the purpose of defending against the disagreement and claims of [a plaintiff] in prospective post-decisional litigation against the plan, then it follows that whenever the administration of a plan involves the denial of a beneficiary's claim for benefits under a plan, all of the pre-decisional legal advice of counsel would be subject to the attorney-client privilege and not available for review by the beneficiaries of the plan, including the disappointed beneficiary. This contradicts the principle that the Plan's Administrator administers the plan in the beneficiaries' best interests. Because denying benefits to a beneficiary is as much a part of the administration of a plan as conferring benefits to a beneficiary, the prospect of post-decisional litigation against the plan is an insufficient basis for gainsaying the fiduciary exception to the attorney-client privilege.

*Kushner*, 2018 WL 3454685, at *4 (quoting *Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 620 (D. Kan. 2001) and citing *Geissal v. Moore Med. Corp.*, 192 F.R.D. 620, 625 (E.D. Mo. 2000) (same)).

Returning to the present situation, before Minnesota Life initially denied Plaintiff Freel's claim for benefits on April 15, 2011, a physician employed by Minnesota Life reviewed Mr. McVay's (the deceased's) medical records and concluded that a number of factors contributed to his death. *See* Doc. #42, *PageID* #878 (and citations therein). The redacted communications that occurred on March 22, 2011, and on April 7, 13, and 15, 2011 concerned matters of plan administration—specifically, whether to grant or deny benefits. This is so even though in-house counsel provided his legal opinion because the relationship between the fiduciary, Minnesota Life, and Ms. Freel was not sufficiently adversarial to

negate the fiduciary exception.  At this point, Ms. Freel had not retained counsel (or informed Minnesota Life she had hired counsel) to represent her in support of her initial claim, and she had not provided any indication to Minnesota Life that a plan to litigate a possible denial of benefits was in the works.  Additionally, Minnesota Life relied on a physician's opinion that it believed supported the denial of benefits, and the claims file did not yet contain a contrary physician opinion.  The fiduciary exception therefore requires Minnesota Life to provide Plaintiffs with unredacted copies of the pages Bates stamped MC_000009 and MC_000010.

Soon after Minnesota Life informed Ms. Freel of its initial decision to deny benefits, her counsel notified Minnesota Life that he represented Plaintiffs.  He also asked Minnesota Life to send certain claim-related records to him.  *See* Doc. #21, PageID #594.  Minnesota Life's internal communications on May 19 and 23, 2011 concerned its response to counsel's records request and the release of those records to Plaintiffs' counsel.  This situation— Plaintiffs had now retained counsel and their counsel had requested certain claim-related records—involved ordinary matters of ERISA claim administration.  Without more, litigation at this time remained merely a remote possibility.

Minnesota Life maintains, quoting *Shields v. Unum Provident Corp*., 2007 WL 764298, at *5 (S.D. Ohio 2007) (King, M.J.), "'when an administrator is required to justify or to defend against a beneficiary's claims made because of an act of plan administration, the administrator does not act directly in the interests of the disappointed beneficiary but in his own interests or in the interests of the rest of the beneficiaries.'"  (Doc. #42, *PageID* #881) (quoting *Shields*, 2007 WL 764298, at *5 (citations omitted)).  This does not assist

Minnesota Life as to the communications in March, April, and May 2011 because the parties' relationship had not become adversarial during this time. A named beneficiary interacting with an ERISA fiduciary, who represented the best interests of the beneficiaries. This is seen in counsel's records request itself and Minnesota Life's internal communications in April and May 2011—which, again, involved an ordinary matters of ERISA claim administration. The fiduciary exception therefore requires Minnesota Life to provide Plaintiffs with unredacted copies of the page Bates stamped MC_000011.

It is necessary to briefly pause here because Defendants also rely on the attorney work-product doctrine to shield the redactions of the March, April, and May 2011 communications. Yet the fiduciary exception also applies to the work-product doctrine. *See Kushner*, 2018 WL 3454685, at *5 (and cases cited therein). Because there was no more than a mere possibility of future litigation during this time period, the fiduciary exception applies, and the work-product doctrine does not apply to the redacted communications Bates stamped MC_000009, MC_000010, MC_000011.

Things changed somewhat dramatically on or around June 10, 2011. On that date, Plaintiffs' counsel notified Minnesota Life that Plaintiffs were appealing the initial denial of benefits. *Id*. at 612. This nudged the situation a bit closer to raising more than a mere possibility of future litigation. And Plaintiffs did more: Their counsel wrote that there was "no basis for a denial of accidental death and dismemberment benefits …." *Id*. at 612. Counsel also provided Minnesota Life with a copy of a letter written by Dr. Chamberlain, Mr. McVay's treating physician. Dr. Chamberlain opined that Mr. McVay died from an intracranial hemorrhage after a fall rather than from other causes, including the cause of

death (thrombocytopenia) Minnesota Life identified in their initial denial decision. *Id.* at 614. In support of this, Dr. Chamberlain explained that Ms. Freel's brother's thrombo-cytopenia was "asymptomatic." *Id.*

Once Minnesota Life received counsel's strongly worded, evidence-based letter along with Dr. Chamberlain's opinion letter, Minnesota Life faced more than a mere possibility of future litigation if it continued to deny benefits. Its relationship with Plaintiffs had become adversarial, with Minnesota Life knowing—almost to a certainty—that litigation would occur if it continued to deny benefits after June 10, 2011. As a result, the fiduciary exception does not apply to Minnesota Life's redacted communications after June 10, 2011. The attorney-client privilege protects these communications from disclosure.

## IT IS THEREFORE ORDERED THAT:

Minnesota Life shall produce to Plaintiffs unredacted copies of the document Minnesota Life has Bates stamped MC_000009, MC_000010, and MC_000011. The attorney-client privilege shields the remaining redacted communications identified in the privilege log Minnesota Life produced on 7/11/2018.

July 10, 2019                                    *s/Sharon L. Ovington*
                                                 Sharon L. Ovington
                                                 United States Magistrate Judge